IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :      Criminal Action No. 11-226-1
     :
     vs.      :
     :
HARRY KATZIN      :

## SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT HARRY KATZIN'S MOTION TO SUPPRESS PHYSICAL EVIDENCE

I.    The Pre-*Jones* World

In May 2010, Federal Bureau of Investigation Special Agent Steven McQueen received information from various sources that Defendant Harry Katzin ("Harry") was involved in pharmacy burglaries. See Page 6 of the Government's Supplemental Omnibus Response and Memorandum of Law In Opposition to Defendants' Motions to Suppress Physical Evidence ("Supplemental Response").

On August 6, 2010, the United States Court of Appeal for the District of Columbia Circuit decided *United States v. Maynard*, 615 F.3d 544 (D.C. Cir.2010). Law enforcement officers installed at a Global Positional System ("GPS") tracking device on Antoine Jones' Jeep without a search warrant. In reversing Mr. Jones' conviction of controlled substance offenses, it stated:

> To be sure, absent the GPS data a jury reasonably might have inferred Jones was involved in the conspiracy. "We are not concerned here," however, "with whether there was sufficient evidence on which [Jones] could have been convicted without the evidence complained of"; rather our concern is with "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy v. Connecticut*, 375 U.S. 85, 86-87, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963). Without the GPS data the evidence that Jones was

actually involved in the conspiracy is so far from
"overwhelming" that we are constrained to hold the Government
has not carried its burden of showing the error was harmless
beyond a reasonable doubt.

. . .

Jones's conviction is reversed because it was obtained with
evidence procured in violation of the Fourth Amendment.

*Id.* at 568.

Between May 2010 and December 13, 2010, Agent McQueen had approximately

seven months to obtain a search warrant for the installation of a GPS tracking device on

Harry's motor vehicle.   He failed to do so.   At about 2:00 A.M. on December 13, 2010, FBI

personnel installed a GPS tracking device on the unoccupied 2001 Dodge Caravan owned by

Harry while it was parked on a public street in the City of Philadelphia.

On December 15, 2010, Agent McQueen used the GPS tracking device to follow

Harry's van from Philadelphia to Hamburg, Pennsylvania.   On December 16, 2010,

Pennsylvania State Police Troopers stopped the van on Interstate 78 between Hamburg and

Philadelphia and arrested Harry and his two brothers, Co-Defendants Michael Katzin and Mark

Katzin.   Harry was driving the van and his brothers were passengers.

On June 27, 2011, the Supreme Court granted the government's petition for a

writ of certiorari in *United States v. Antoine Jones*   It stated:

The petition for a writ of certiorari is granted.   In addition to
the question presented by the petition, the parties are directed to
brief and argue the following question:   "Whether the government
violated respondent's Fourth Amendment rights by installing the
GPS tracking device on his vehicle without a valid warrant and
without his consent."

II.   <u>The *Jones* Decision</u>

On January 23, 2012, the Supreme Court affirmed the decision of the D.C. Circuit in *United States v. Jones*, 565 U.S. ___, 132 S.Ct. 945 (2012).   In an unanimous 9-0 decision, it held that the attachment of a GPS tracking device to an individual's vehicle, and the subsequent use of that device to monitor its movements on public streets, constitutes a search within the meaning of the Fourth Amendment.   It stated:

> The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated."   It is beyond dispute that a vehicle is an "effect" as that term is used in the Amendment.   (Citation omitted.)   We hold that the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a "search."
>
> It is important to be clear about what occurred in this case:   The Government physically occupied private property for the purpose of obtaining information.

*Id*. at 949.   Such a common-law trespass would have been considered a search when the Fourth Amendment was adopted.   *Id*. at 949.   By affirming the D.C. Circuit, the Supreme Court agreed with its conclusion that Mr. Jones' convictions had to be reversed because the government obtained them by introducing at trial evidence procured in violation of the Fourth Amendment.

III.   <u>The Ramifications of the *Jones* Decision</u>

Under *Jones*, the location of the installation of the GPS device, whether on a public street, in a public parking lot or on private property, is irrelevant.   The length of the period of the tracking of the vehicle, whether for a few days or a month, is likewise irrelevant.

Moreover, in *Cowin v. Bresler*, 741 F.2d 410, 425 (D.C. Cir.1984), the D.C. Circuit discussed Supreme Court decisions as follows:

> In cases of doubt, the institutional role of the Supreme Court weighs in favor of considering its rulings to be general rather than limited to the particular facts.   The Supreme Court, unlike the lower federal courts, is given a largely discretionary jurisdiction which is used when areas of the law require clarification.   As Judge Marshall put it in holding that *Blue Chip* forecloses injunctive suits by plaintiffs who have neither purchased nor sold securities, "[W]e must be mindful of the [Supreme] Court's function in hearing and deciding . . . cases.   It does not sit to adjudicate individual disputes; that is the business of the district courts and courts of appeal.   Rather it uses individual cases and controversies to shape and guide the development of the law.   This is particularly true where, as here, it speaks in an area of judge made law."   (Citation omitted.)   When the Court wishes to make a narrow, fact-bound holding, typically it says so.   When it does not say so, the rebuttable presumption is that a general rule has been enunciated.

*See also Murphy v. Federal Deposit Insurance Corporation*, 61 F.3d 34, 39 (D.C. Cir.1995).

The Supreme Court in *Jones* did not state that its holding was narrow or bound exclusively to the facts before it.   Therefore, there is a rebuttable presumption that *Jones* has enunciated a general rule that the installation of a GPS tracking device on a motor vehicle without a search warrant must result in the suppression of the evidence obtained through the use of the device.

IV.   The Post-*Jones* World

On February 21, 2012, the Supreme Court granted the defendant's petition for a writ of certiorari in *Cuevas-Perez v. United States*, ___ S.Ct. ___ 2012 WL 538289 (U.S.), vacated the judgment and remanded the case to the United States Court of Appeals for the Seventh Circuit for further consideration in light of *Jones.*   In *United States v. Cuevas-Perez*, 640 F.3d 272 (7th Cir.2011), the Seventh Circuit affirmed the district court's denial of Mr.

-4-

Cuevas-Perez's motion to suppress evidence in which he argued that the warrantless installation of a GPS tracking device on his Jeep Laredo SUV violated his Fourth Amendment rights.   It held that the use of a GPS tracking device to track a drug suspect for 60 hours across six states did not violate the Fourth Amendment because it was not a search.   *Id*. at 272-73.   In the dissent, Judge Wood concluded that the detective conducted a search during the time he used the GPS unit on the Jeep to monitor the defendant's location and that, because he had no search warrant, this search was unconstitutional.   *Id*. at 295.

On February 21, 2012, the Supreme Court also granted the defendant's petition for a writ of certiorari in *Pindea-Moreno v. United States*, ___ S.Ct. ___ 2012 WL 538278 (U.S.), vacated the judgment and remanded the case to the United States Court of Appeals for the Ninth Circuit for further consideration in light of *Jones*.   In *United States v. Pineda-Morena*, 591 F.3d 1212 (9th Cir.2010), the Ninth Circuit affirmed the district court's denial of Mr. Pineda-Moreno's motion to suppress evidence in which he contended that law enforcement officers violated his Fourth Amendment rights when they attached mobile tracking devices on his Jeep Grand Cherokee on four occasions when it was parked on a public street, on one occasion when it was parked in a public parking lot and on two occasions when it was parked in the driveway of his home.

V.   The Government's Arguments

1.   Standing

Harry concurs with the government that he has standing to contest the installation of the GPS tracking device.   He was the registered owner on December 13, 2010 and its driver on December 15-16, 2010.

2.   Lack of Probable Cause

When federal officers have probable cause to believe that an automobile contains contraband, the Fourth Amendment does not require them to obtain a warrant prior to searching it and seizing the contraband.  *United States v. Carroll*, 267 U.S. 132, 150-51, 45 S.Ct. 280, 69 L.Ed.2d 543 (1925).  The automobile exception to the Fourth Amendment provides that if a car is readily mobile and probable cause exists to believe it contains contraband, police can search it without a warrant.  *California v. Carney*, 471 U.S. 386, 393, 105 S.Ct. 2066, 2070, 85 L.Ed.2d 406 (1985).

In *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S.Ct. 2485, 135 L.Ed.2d 1031 (1996), the Supreme Court held that the police had probable cause to search a motor vehicle without a warrant in two different cases:  in the first case, they saw Mr. Labron put drugs in the truck of the car; in the second, they saw Mr. Kilgore act in ways which suggested he had drugs in the trunk of his vehicle.  In *United States v. Burton*, 288 F.3d 91, 100 (3d Cir.2002), the Third Circuit concluded that the automobile exception permitted police to seize and search a car without a warrant when they saw the defendant leave what they thought was a drug deal and place the results of that transaction in the trunk of the car.  In *United States v. Andrew*, 417 Fed.Appx. 158, 161, 163 (3d Cir.2011), the Third Circuit held that the search of the defendant's car was constitutional under the automobile exception because, as he was getting out of his car, an officer saw a transparent plastic bag containing a leafy green substance under the radio in front of the gear shift.  In *United States v. Ushery*, 400 Fed.Appx. 674, 675-76 (3d Cir.2010), the Third Circuit ruled that the automobile exception allowed two police officers to seize and search the defendant's car when they smelled burnt marijuana coming from inside it.

Probable cause requires a fair probability that contraband or evidence of a crime will be found in a particular place and is based on the totality of the circumstances.  *Illinois v. Gates*, 462 U.S. 213, 230, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).  It exists where the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a reasonable person to believe an offense has been committed.  *United States v. McGlory*, 968 F.2d 309, 342 (3d Cir.1992).

On December 13, 2010 and pursuant to *Jones*, law enforcement conducted a search of Harry's van when they installed the GPS tracking device on it.   At that time they did not have probable cause to believe that it contained contraband.   It was parked on a public street and unoccupied at two o'clock in the morning.

On December 16, 2010, Harry was not seen near, at or inside the Ride Aid Pharmacy by FBI agents, PSP Troopers, Hamburg Borough Police Officers or any civilian witness.   His van was not seen near or at the pharmacy by them.   It committed no vehicle code infractions while it was being followed by the PSP Troopers.   No reasonable person could believe from these facts that Harry had burglarized the pharmacy or that the van contained evidence of that crime.

Moreover, because they were not physically surveilling Harry or his van at the time, law enforcement would not have been able to follow the van to Hamburg on December 15, 2010 but for the unconstitutional installation and use of the GPS tracking device.   Without the GPS data, they would have had no knowledge of Harry or the van's location.   They did not have probable cause to stop and search the van on December 16, 2010.

3.   Lack of Reasonable Suspicion

A police officer may conduct a brief investigatory stop when he has a reasonable, articulable suspicion that criminal activity is afoot.  *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).   In assessing whether a vehicle stop was supported by reasonable suspicion, the totality of the circumstances must be considered to determine if the officers had a particularized and objective basis for suspecting the particular person stopped of criminal activity.  *United States v. Johnson*, 592 F.3d 239, 448-49 (3d Cir.2010).   The stop must be based on something more than an inchoate and unparticularized suspicion or hunch.  *Johnson v. Campbell*, 332 F.3d 199, 206 (3d Cir.2003).   For example, when officers pulled up beside the defendant's car in an unmarked police car and saw him counting money with cocaine on his lap, they had reasonable suspicion to conduct a warrantless search and seizure.  *United States v. Skinner*, 2012 WL 234410*2 (C.A.3 (Pa.))

On December 13, 2010 and pursuant to *Jones*, law enforcement conducted a search on Harry's van when they installed the GPS tracking device on it.   At that time they did not have a reasonable articulable suspicion that criminal activity was afoot.   It was parked on a public street and unoccupied at two o'clock in the morning.

On December 16, 2010, Harry was not seen near, at or inside the Rite Aid Pharmacy by FBI agents, the PSP Troopers, the Hamburg Borough Police Officers or any civilian witness.   His van was not seen near or at the pharmacy by them.   It committed no vehicle offense while it was being followed by the PSP Troopers.

Moreover, because they were not physically surveilling Harry or his van at the time, law enforcement would not have been able to follow the van to Hamburg on December 15,

-8-

2010 but for the unconstitutional installation and use of the GPS tracking device.   Without the GPS data, they would have had no knowledge of Harry or the van's location.   It is clear that they acted solely on a hunch in stopping it.   They did not have reasonable suspicion to stop and search the van on December 16, 2010.

4.  Binding Authority

The government contends that Harry's motion to suppress evidence should be denied because the agents installed the GPS  tracking device on his van without a warrant in objective good faith on the basis of existing law.   It cites *Davis v. United States*, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011) in support of its contention.   Police conducted a routine stop of the vehicle in which Mr. Davis was a passenger in Greenville, Alabama in April 2007.   They arrested him when he gave a false name.   They then searched the vehicle and found his gun.   He was charged with being a felon in possession of a firearm.   He filed a suppression motion in which he acknowledged that the vehicle search fully complied with existing, binding Eleventh Circuit precedent interpreting *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).   He raised a Fourth Amendment challenge to the search in order to preserve the issue on appeal.   The district court denied his suppression motion and he was later convicted of the offense.   He filed an appeal.   During the appeal and two years after the vehicle search, the Supreme Court announced a new rule governing automobile searches incident to arrests of recent occupants in *Arizona v. Gant*, 556 U.S. 332, 129 S.Ct. 17190, 173 L.Ed.2d 485 (2009).   The Eleventh Circuit held that, under *Gant*, the vehicle search violated his Fourth Amendment rights; however, it declined to suppress the gun and affirmed his conviction.   The Supreme Court affirmed the Eleventh Circuit by holding that searches conducted in objectively reasonable

reliance on <u>binding appellate authority</u> are not subject to the exclusionary rule in the event that that binding authority is later overruled.

Here, there was no binding Supreme Court authority or Third Circuit authority permitting the warrantless installation of GPS tracking devices on suspects' vehicles when the FBI attached the device to Harry's van on December 13, 2010.   Indeed, the government failed to cite any such authority in its Supplemental Response.   Moreover, Harry, unlike Mr. Davis, does not concede that the actions of the FBI on December 13, 2010 fully complied with existing, binding appellate precedent.

First, the Supreme Court did not address this issue until it decided *Jones* more than 13 months later on January 23, 2012.

Second, the Third Circuit had not addressed this issue as of December 13, 2010. *See United States v. Nwobi*, 2012 WL 769746*3 (C.D.Cal.) (The good faith exception to the exclusionary rule cited in *Davis* could not have applied to the evidence sought to be suppressed in *Jones* because at the time of the installation of the GPS device on Mr. Jones' vehicle, there was no binding D.C. Circuit precedent authorizing the warrantless installation of a GPS tracking devices on suspects' vehicles; thus, *Davis* had no application to the facts of the *Jones* case.) *Davis* likewise has no application to the facts of the instant case.

Third, the decisions of other circuit courts in effect on December 13, 2010 were not binding on the Third Circuit; at best, they were merely persuasive.   *See United States v. Lyons*, 510 F.3d 1225, 1233 n. 2 (10th Cir.2007).   Excluding Supreme Court cases, the Third Circuit is bound only by Third Circuit Opinions which have been designated as precedential. *See* 3d Cir. I.O.P. 5.2 (2010).

VI.   <u>Conclusion</u>

   The government occupied Harry's personal property on December 13, 2010 for the express purpose of obtaining information to use against him in a criminal prosecution.   This search was accomplished without the prior approval and authorization of a judicial officer.   No exception to the search warrant requirement applies.   Therefore, the Court should suppress all the physical evidence seized from his van on December 16, 2010.

<u>**/s/ Thomas A. Dreyer**</u>
Thomas A. Dreyer
6 Dickinson Drive
Building 100 – Suite 106
Chadds Ford, PA  19317
610-358-4454
Attorney for Harry Katzin

**<u>CERTIFICATE OF SERVICE</u>**

   Thomas A. Dreyer, Esquire hereby certifies that he served true and correct copies

of the within Defendant Harry Katzin's Supplemental Memorandum of Law in Support of

Motion to Suppress Physical Evidence upon the persons named below on the date listed below

by the Electronic Case Filing ("ECF") System:

     Thomas M. Zaleski, Esquire
     Assistant United States Attorney
     615 Chestnut Street
     Suite 1250
     Philadelphia, PA  19106-4476

     William A. DeStefano, Esquire
     Buchanan Ingersoll & Rooney, Inc.
     Two Liberty Place
     50 South 16th Street
     Suite 3200
     Allentown, PA  19102-2555
     Attorney for Michael Katzin

     Rocco C. Cipparone, Esquire
     203-205 Black Horse Pike
     Haddon Heights, NJ  08035
     Attorney for Mark Lewis Katzin, Jr.

          <u>/s/ **Thomas A. Dreyer**</u>
          Thomas A. Dreyer, Esquire
          6 Dickinson Drive
          Building 100 – Suite 106
          Chadds Ford, PA  19317
          610-358-4454
          Attorney for Harry Katzin

Dated:  March 21, 2012